IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

HAKIM NASEER,

                                                      ORDER

            Plaintiff,

                                                    13-cv-245-bbc

      v.

MARY MILLER, NURSE REUTEUR,
LT. ESSER, SGT. SCULLION,
KELLY TRUMM,  ELLEN RAY,
NANCY PADGETT, NURSE T. BRADY,
MS. NYGREN, CAPT. WEBER, P
ROPERTY OFFICER MORRIS, PAUL KEMPER,
TIM HAINES and JASON ALDANA,

            Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Hakim Naseer, a prisoner currently housed at the Racine Correctional Institution, has filed a lawsuit alleging that he was injured by prison staff and subsequently was not given medical care for his injuries.  He has struck out under 28 U.S.C. § 1915(g), which means that he cannot obtain indigent status under § 1915 in any suit he files during the period of his incarceration unless he alleges facts in his complaint from which an inference may be drawn that he is in imminent danger of serious physical injury.  After applying 28 U.S.C. § 1915(g) to plaintiff's claims, I conclude that several of his claims meet the imminent danger requirement while others do not.  Therefore, I will give him a chance to choose whether (1) to proceed with his imminent danger claims, at which point those

1

claims will be screened but his other claims will be dismissed without prejudice; or (2) pay the $350 filing fee and have the court screen all of his claims.

I draw the following facts from plaintiff's complaint.

ALLEGATIONS OF FACT

Plaintiff Hakim Naseer is a prisoner housed at the Racine Correctional Institution. In February 2013, he was housed at the Wisconsin Secure Program Facility, in Boscobel, Wisconsin.

On February 12, 2013, an attempt was made on plaintiff's life (plaintiff does not explain whether this was a separate incident or a reference to defendants' actions, as described below.)  Defendant Esser demanded that plaintiff come out of his cell or he would use deadly force.  Defendant Scullion conducted a sexually aggressive patdown search and punched plaintiff in the testicles twice. Plaintiff was taken to the ground even though his arm was still tied to the door.  Plaintiff says that his skin was torn, his arm was "dislocated, the nerves in [his] hand and arm got ruptured and the veins in [his] hand ended up severely punctured, rendering [his] hand and arm useless/inoperative." Defendants Miller, Reuteur, Ray, Trumm and Haines assisted one another in disregarding and rejecting plaintiff's complaints and refusing to document the damage done to his arm.

On March 4, 2013, plaintiff was transferred to the Racine Correctional Institution. Plaintiff believes this was part of an "overall institution(s) conspiracy to sabotage all aspects of the 2/12/13 incident."  When plaintiff arrived at the Racine prison, he did not receive a

2

medical segregation intake examination from defendant Nurse T. Brady. Defendants' health care supervisor Nygren, Warden Kemper, Security Director Aldana and Unit Manager Weber did not respond to plaintiff's correspondence regarding medical help for the injuries he suffered at WSPF. Defendant Padgett erases plaintiff's grievances from the computer database. Defendant Property Officer Morris is withholding plaintiff's legal materials in attempt to derail plaintiff's lawsuit.

## DISCUSSION

### A. Imminent Danger

Plaintiff seeks leave to proceed in forma pauperis in this case under 28 U.S.C. § 1915. However, as stated above, plaintiff has struck out under 28 U.S.C. § 1915(g). This provision states as follows:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

On at least three prior occasions, plaintiff has been denied leave to proceed in forma pauperis in lawsuits that were legally frivolous. Naseer v. Neumaier, 10-cv-399-bbc; (W.D. Wis. Sept. 29, 2010); Naseer v. Belz, 10-cv-27-bbc; (W.D. Wis. Feb. 16, 2010); Naseer v. Trumm, 09-cv-699-bbc (W.D. Wis. Dec. 11, 2009).

To meet the imminent danger requirement of 28 U.S.C. § 1915(g), a prisoner must

3

allege a physical injury that is imminent or occurring at the time the complaint is filed and show that the threat or prison condition causing the physical injury is real and proximate. Ciarpaglini v. Saini, 352 F.3d 328, 330 (7th Cir. 2003) (citing Heimermann v. Litscher, 337 F.3d 781 (7th Cir. 2003); Lewis v. Sullivan, 279 F.3d 526, 529 (7th Cir. 2002)). In his complaint, plaintiff alleges that he was injured in an altercation with prison staff and that he has not been receiving medical care for the injuries he sustained.

In considering whether plaintiff's complaint meets the imminent danger requirement of § 1915(g), a court must follow the well established proposition that pro se complaints must be liberally construed. Ciarpaglini, 352 F.3d at 330. Further, it is improper to adopt a "complicated set of rules [to discern] what conditions are serious enough" to constitute "serious physical injury" under § 1915(g). Id. at 331. Given this framework, I conclude that plaintiff's allegations regarding the *current* failure to provide him with medical care at the Racine prison qualify under the imminent danger standard. Therefore, plaintiff may proceed on these claims without prepayment of the $350 filing fee.

However, plaintiff's claims for *past* harm regarding the violent altercation and subsequent lack of medical care at plaintiff's prior place of incarceration do not qualify under the imminent danger standard. Nor do his claims regarding interference with his legal work. Finally, plaintiff attempts to tie all of his claims by alleging an underlying conspiracy. However, under Reynolds v. Jamison, 488 F.3d 756, 764 (7th Cir. 2007), a "bare conclusion" or "mere suspicion that persons adverse to the plaintiff had joined a conspiracy against him or her" is insufficient to survive a motion to dismiss for failure to state a claim."

4

Therefore, I conclude that plaintiff's allegations of conspiracy do not make the acts of past harm part of plaintiff's claims for current harm.  Because the allegations of past harm do not involve a threat of present imminent danger, plaintiff cannot proceed on these claims <u>in forma</u> <u>pauperis</u>.

It is this court's usual practice to move forward on imminent danger claims as quickly as possible by screening the complaint even before an initial partial payment has been made and, if the complaint survives screening, setting expedited briefing on preliminary injunctive relief.  <u>E.g.</u>, <u>Norwood v. Strahota</u>, 08-cv-446 (W.D. Wis. Aug. 11, 2008).  On the other hand, in cases in which a plaintiff with three strikes brings no claims that allege imminent danger, ordinarily this court gives the plaintiff a short deadline within which he is to pay the full $350 filing fee or have the case closed.  This case is unusual in that plaintiff brings some claims that qualify for the imminent danger exception and others that do not.  It is impractical to proceed quickly on the imminent danger claims while waiting for payment of the filing fee in order to screen his other claims under 28 U.S.C. § 1915A.  Therefore, I will give plaintiff a choice:  he can (1) proceed with his imminent danger claims, at which point I will screen those claims but dismiss his other claims without prejudice; or (2) pay the $350 filing fee and have the court screen all of his claims.  He will have until July 30, 2013, to make the choice.  Should he fail to respond by the deadline, I will assume that he wishes to proceed on his imminent danger claims and I will dismiss his other claims.

Should plaintiff choose to proceed only on his imminent danger claims, he will have to prepay only an initial partial payment of the $350 filing fee.  From the trust fund account

5

statement plaintiff has submitted, I have calculated plaintiff's initial partial payment to be $0.66. He is to submit a check or money order made payable to the clerk of court in the amount of $0.66 by July 30, 2013. If plaintiff does not have the money to make the initial partial payment in his regular account, he will have to arrange with prison authorities to pay some or all of the assessment from his release account. This does not mean that plaintiff is free to ask prison authorities to pay all of his filing fee from his release account. The only amount plaintiff must pay at this time is the $0.66 initial partial payment. Before prison officials take any portion of that amount from plaintiff's release account, they may first take from plaintiff's regular account whatever amount up to the full amount plaintiff owes.

### B. Motion for Return of Legal Materials

Also, plaintiff has filed a motion for the return of his legal materials, which have been taken by defendant Morris. As stated above, plaintiff's claim regarding access to the courts does not meet the imminent danger requirement. Even to the extent that plaintiff seeks to file a motion within the case that is moving forward, he does not explain how he has been frustrated in litigating the current case; thus far he has submitted sufficient materials with his complaint. Plaintiff's current motion will be denied, but he may renew his motion at a later date if he can point to specific tasks that he cannot complete because of prison staff's interference with his legal materials.

ORDER

IT IS ORDERED that

1. Plaintiff Hakim Naseer may have until July 30, 2013, to advise the court whether he wishes to (1) proceed with his imminent danger claims, at which point I will screen those claims but dismiss his other claims without prejudice; or (2) pay the $350 filing fee and have the court screen all of his claims. Should plaintiff fail to respond to this order by July 30, 2013, I will assume that he wishes to proceed on his imminent danger claims and I will dismiss his other claims. If he decides to proceed on only his imminent danger claims, he may have until July 30, 2013, to submit a check or money order made payable to the clerk of court in the amount of $0.66.

2. Plaintiff's motion for the return of his legal materials, dkt. #3, is DENIED without prejudice.

Entered this 12th day of July, 2013.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge